UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAMON ALVARADO, JR.,
    Plaintiff,

v.                                                       Case No. 20-C-659

TORRIA VAN BUREN,
    Defendant.

## ORDER

Ramon Alvarado, Jr., a Wisconsin state prisoner representing himself, filed this lawsuit under 42 U.S.C. § 1983. I screened the complaint and permitted him to proceed on an Eighth Amendment claim against the defendant, who now moves for summary judgment on the ground that the plaintiff failed to exhaust his available administrative remedies before bringing this lawsuit.

## I. BACKGROUND[1]

The plaintiff is an inmate at Waupun Correctional Institution and was at all times related to this lawsuit. ECF No. 23, ¶ 2. I allowed him to proceed on an Eighth Amendment claim that on December 9, 2017, defendant Dr. Torria Van Buren ignored his request to be placed on observation status after he allegedly became suicidal. *Id.*, ¶ 1; ECF No. 10.

Inmate Complaint Examiner (ICE) Tonia Moon (who is not a defendant) reviewed the inmate complaint tracking system for grievances the plaintiff submitted. ECF No. 23, ¶¶ 6–7. According to Moon, the plaintiff filed one inmate complaint related to the claim at issue in

---

[1] Facts in this section are taken from the defendant's proposed findings of fact and declaration in support of her motion for summary judgment, ECF Nos. 23–24, the plaintiff's responses and supplemental proposed findings of fact, ECF Nos. 27–29, and the defendant's reply, ECF No. 31. I will consider the proposed facts only to the extent the parties support them with evidence in the record, *see* Fed. R. Civ. P. 56(c)(1), and will consider arguments in the supporting memorandum only to the extent they properly refer to the facts, *see* Civil L. R. 56(b)(6). I will deem admitted any supported facts that the opposing party does not properly contest. *See* Civil L. R. 56(b)(4); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.").

this lawsuit. *Id.*, ¶ 8. He signed that complaint on December 25, 2017, and the ICE office received it the next day. *Id.*, ¶¶ 9–10; ECF No. 24-2 at 1, 8. The complaint lists the incident date as December 9, 2017, and alleges Van Buren "refused to place me in observation after I claimed to be suicidal, which led me to cut myself twice on my left wrist almost killing myself." ECF No. 23, ¶ 11; ECF No. 24-2 at 8. An ICE rejected the complaint because the plaintiff filed it more than fourteen calendar days from the date of the incident, and the plaintiff provided no good cause to accept the late filing. ECF No. 23, ¶ 12; ECF No. 24-2 at 2.

The plaintiff requested that the ICE accept his complaint "because [he] was on obs[ervation status], control status, and paper restriction" during the fourteen-day window to file the complaint. ECF No. 23, ¶ 13; ECF No. 27, ¶ 12. Moon notes that the plaintiff was released from observation status on December 12, 2017 and placed in controlled segregation; he was released from controlled segregation on December 14, 2017 and then placed onto disciplinary separation. ECF No. 23, ¶ 14; ECF No. 24-3 at 2. Moon explains that inmates on a paper restriction and/or in observation status cannot keep paper in their cell but may ask a security officer to fill out an inmate complaint form or a request to clinical or medical staff. ECF No. 23, ¶ 15; ECF No. 24, ¶ 21. If so, the security officer notes on the form that they filled it out for the inmate who was on paper restriction or observation status. ECF No. 23, ¶ 15; ECF No. 24, ¶ 21. The Segregation Unit Inmate Handbook outlines this procedure. ECF No. 24-5 at 3 ("If you are placed on a paper restriction, you will need to request assistance from one of the Segregation Officers to fill out medical, psychological, legal[,] recreation, and inmate complaint forms."). A copy of the handbook is given to all inmates housed in the Segregation Unit, and the plaintiff was frequently housed there. ECF No. 23, ¶ 15.

The plaintiff disputes Moon's declaration and states he does not remember receiving the Segregation Unit Handbook when he was placed in temporary lockup on September 19, 2017. ECF No. 27, ¶ 15. He says he was assigned an officer who only monitored his health and safety but did not fill out complaint forms for him. *Id.* He asserts the Segregation

2

Case 2:20-cv-00659-LA   Filed 08/05/21   Page 2 of 9   Document 36

Handbook does not state "that a Security Officer can or is to fill out complaint forms for inmates on observation or control status." *Id*.; ECF No. 29, ¶¶ 2, 4.

Moon asserts that the plaintiff's paper restriction was in effect for only 10 days, so he would have come off that restriction on December 19, 2017. ECF No. 23, ¶ 16; ECF No. 24, ¶ 22; ECF No. 24-4. The notice of the plaintiff's paper restriction from December 9, 2017, says that he was put on a paper restriction because he "used toilet paper to cover window." ECF No. 24-4. The plaintiff insists his restriction did not begin until December 10, 2017, and lasted until December 20, 2017. ECF No. 27, ¶ 16; ECF No. 29, ¶¶ 6–7. He also says the ICE office was closed during the holiday weekend from December 23 to 25, 2017. ECF No. 29, ¶ 12.

On January 9, 2018, the plaintiff filed a request for review of his rejected complaint with a reviewing authority. ECF No. 23, ¶ 17; ECF No. 24-2 at 13. He again asserted he was on control status and paper restriction and insisted that constituted good cause for his late complaint. ECF No. 24-2 at 13. The reviewing authority concluded that the ICE appropriately rejected the plaintiff's complaint as untimely. ECF No. 23, ¶ 18; ECF No. 24-2 at 5.

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

**A.     Exhaustion**

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (citing *Woodford*, 548 U.S. at 93), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir. 2020)). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claim. *See Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative requirements" is not enough to exhaust administrative remedies. *Farina v. Anglin*, 418 F.App'x 539, 543 (7th Cir. 2011) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001), and *Dole*, 438 F.3d at 809). Because exhaustion is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to exhaust. *See Pavey v. Conley*, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

Wisconsin has an established system that allows inmates to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code

§§ DOC 310.01, 301.04 (2014).[2] Inmates must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. *Id.* § DOC 310.05. An inmate must file a complaint within fourteen calendar days of the incident he seeks to grieve. *See id.* § DOC 310.09(6). The ICE may reject the complaint if "[t]he inmate submitted the complaint beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause for the ICE to extend the time limits." *Id.* § DOC 310.11(5)(d). An inmate may appeal a rejected complaint to a reviewing authority within ten calendar days. *Id.* § DOC 310.11(6). The reviewing authority will review only the basis for the rejection of the complaint, and her decision is final. *Id.* An ICE has discretion to accept a late complaint for good cause. *Id.* § DOC 310.09(6).

**B.   Discussion**

It is undisputed that the plaintiff filed only one inmate complaint about the issue in this lawsuit. The complaint was due by December 23, 2017—fourteen days after the date of the incident—but the plaintiff did not file it until December 25, 2017. An ICE rejected the complaint because it was untimely, and the reviewing authority affirmed that basis for rejecting the complaint. A complaint that is "rejected solely on the basis of untimeliness will not fulfill the exhaustion requirement." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) (citing *Pozo*, 286 F.3d at 1025).

The plaintiff asserts that he did not file a grievance until December 25, 2017 because the grievance process was not available to him until then. He contends that his paper restriction kept him from filing an inmate complaint until December 20, 2017 and the short window of time after that was insufficient to prepare and submit a complaint. The defendant responds that inmates on a paper restriction need to ask security officers to write their

---

[2] Wisconsin updated its Administrative Code related to inmate complaints in 2018, after the plaintiff filed his inmate complaint related to this lawsuit. All references to the Administrative Code are to the 2014 provisions that were in effect at the time the plaintiff filed his complaint.

5

complaints for them. The Segregation Handbook, which the defendant asserts is provided to all inmates in segregation and was provided to the plaintiff, informs inmates of this process. The plaintiff insists he was unaware of that procedure because no one told him about it, and he did not receive a copy of the handbook. He asserts that his restricted status provided "good cause" to excuse his untimely complaint.

Inmate grievance procedures are considered "available" when they "are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S.Ct. 1850, 1859 (2016) (quoting *Booth*, 532 U.S. at 738). Courts most often find administrative remedies "unavailable" when prison officials' "'affirmative misconduct' prevents prisoners from pursuing administrative remedies." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citing *Dole*, 438 F.3d at 809). For example, administrative remedies could be unavailable to an inmate on a paper restriction "if the prison refused to give plaintiff the necessary paperwork during the 14 days following the incident and would not accept a complaint filed after the paper restriction was lifted." *Hiler v. Laurent*, No. 08-C-103-LA, 2009 WL 213000, at *2 (E.D. Wis. Jan. 29, 2009) (citing *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)). The plaintiff does not assert that officers prevented him from asking them to write a complaint for him or refused to do so, either of which may have rendered the grievance procedures unavailable. *See id.*; *Ross*, 136 S.Ct. at 1859–60. He alleges only that he was unaware of the procedure because no one told him about it.

Administrative remedies may also be unavailable because of "omissions by prison personnel, particularly failing to inform the prisoner of the grievance process." *Hernandez*, 814 F.3d at 842; *see King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."). It is the *prison's* duty to inform inmates about the grievance process. *Hernandez*, 814 F.3d at 842 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006); and *King*, 781 F.3d at 896). There is no question the plaintiff was aware of the prison's general grievance policy because he filed over two dozen grievances before December 25, 2017, several of which he fully

6

appealed. ECF No. 24-1 at 1–2. But it is disputed whether the plaintiff was aware that while in observation and on a paper restriction he could ask an officer to write a complaint for him. The plaintiff insists the paper restriction lasted from December 10 to 20, 2017. The defendant asserts the paper restriction lasted from December 9 to 19, 2017, and submitted a copy of the notice of the restriction bearing the earlier start date. ECF No. 24-4. Either way, it is undisputed the plaintiff had only until December 23, 2017, to submit a timely inmate complaint. That means he had no more than four days to prepare and file it.

In certain circumstances, having only a few days to file a grievance may render administrative remedies unavailable. For example, in *White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015), the Seventh Circuit held that a four-day window to file a grievance was "unreasonably short for a woman who had just given birth to a severely impaired child" and who had not been informed about her deadline for filing a grievance. Despite that narrow holding, other courts in this circuit have relied on *White* to conclude that administrative remedies were not available when grievance procedures were "unavailable for only part of the filing period, provided the inmate did not know at the outset that the administrative remedy will become unavailable." *Buck v. Knauer*, No. 18-C-4195, 2021 WL 794979, at *4 (N.D. Ill. Mar. 2, 2021) (finding that administrative remedies were unavailable for inmate who was placed on suicide watch "for 25 days, nearly half of his 60-day filing period, through no fault of his own"); *see Kendrick v. Limburg*, No. 17-C-3000-JRS-DML, 2019 WL 1330382, at *6 (S.D. Ind. Mar. 25, 2019) (finding that administrative remedies were unavailable to inmate placed in administrative lockdown for the last six days of a seven-day grievance period); *Austin v. G4S Secure Sols. USA*, No. 15-C-259-JDP, 2017 WL 2116715, at *3 (W.D. Wis. May 15, 2017) (finding that administrative remedies were unavailable to prison inmate who was moved to county jail for 12 of his 14 days to file complaint at prison and concluding that "a two-day deadline to file a grievance is unreasonable").

The plaintiff swears that he was not aware that he could ask a security officer to draft an inmate complaint for him while he was on a paper restriction. That left him at most four

7

days to file an inmate complaint about the December 9, 2017 incident. A four-day window to file an inmate complaint may not be reasonable and may render the plaintiff's administrative remedies unavailable. The defendant contests the plaintiff's declaration and insists the prison provided him a copy of the Segregation Handbook that informed him to contact an officer to write his complaint while he was on a paper restriction. The Seventh Circuit has instructed that, when there are questions of fact regarding whether a plaintiff exhausted the available administrative remedies, the court must conduct an evidentiary hearing to resolve the issue. *See Pavey*, 544 F.3d at 742. At the hearing, the court "may hear evidence, find facts, and determine credibility… After finding facts, the district court may allow the claim to proceed or dismiss it for failure to exhaust." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018) (citations omitted).

Given the conflicting facts, I find that an evidentiary hearing is necessary to determine whether the plaintiff knew he could ask an officer to write a complaint for him while he was in observation and on a paper restriction. If he was, then the grievance procedures were available to him for all fourteen days, and he has no excuse for not timely filing a complaint. If he was not aware of that procedure, then he had no more than four days during which to file an inmate complaint. In that circumstance, I could not conclude that the administrative remedies were available to him, and he would be excused from not exhausting those remedies before bringing this lawsuit.[3]

---

[3] The plaintiff also asserts that because the ICE did not explain that he could have asked an officer to write a complaint for him, he could not raise on appeal his claim that he was not given a handbook and did not know an officer could write the complaint for him. ECF No. 28, ¶ 8. In support he cites Moon's declaration and his ICE report. But neither of those documents support his assertion that he could not raise on appeal his lack of knowledge that a security officer could complete the inmate complaint form for him. The plaintiff's unsupported assertion does not create a genuine dispute of fact and "is insufficient to avoid summary judgment." *Cooper v. Haw*, 803 F.App'x 942, 946 (7th Cir. 2020). I will not deny the defendant's motion on this basis.

## III. MOTION FOR DEFAULT

As a final matter, the plaintiff moves for an entry of default. ECF No. 34. He asserts the defendant failed to file her reply brief, so he is entitled to an entry of default and $1000 "for the time [he] spent on writing [his] response motion to summary judgment." *Id.* at 1.

I will deny the plaintiff's motion. The defendant timely moved for summary judgment on May 28, 2021. The plaintiff responded on June 14, making the June 28 the due date for a reply. Civil L. R. 56(b)(3). Although she did not file a reply brief by June 28, she later requested permission to file it late. ECF No. 30. The court granted that motion and accepted her tardy reply brief, ECF No. 33, leaving the plaintiff no basis to claim she is in default.

Regardless, I would deny the plaintiff's motion because a reply brief is optional, not mandatory. *See* Civil L. R. 56(b)(3) (providing that the moving party "*may* file" a reply brief within 14 days of service of the response (emphasis added)); *May v. Christian*, No. 16-C-987-LA, 2017 WL 6805634, at *1 n.2 (E.D. Wis. Sept. 18, 2017) (denying motion for default judgment against defendant who did not file a timely reply brief "because, among other reasons, reply materials are optional, not mandatory").

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the court will set, in a separate order, a date and time for an evidentiary hearing to determine whether the administrative remedies were available to the plaintiff to exhaust before he initiated this case. I will defer a ruling on the defendant's motion for summary judgment (ECF No. 21) until after the hearing.

**IT IS FURTHER ORDERED** that the plaintiff's motion for default (ECF No. 34) is **DENIED**.

Dated at Milwaukee, Wisconsin this 5th day of August, 2021.

                                                     s/Lynn Adelman
                                                     LYNN ADELMAN
                                                     United States District Judge